## Calumet Electric St. Ry. Co. v. Rose Jennings.

1. Prima Facie Case—*Proof of the Accident.*—Proof of an accident by which the plaintiff, a passenger on a street railway, in the exercise of ordinary care, was injured, makes out a *prima facie* case for him, and places upon defendant the burden of rebutting all the specific negligence charged in the declaration.

2. Damages—*$2,500 Not Excessive.*—Where a female passenger on a street car was thrown from her seat by the derailing of the car and her collar bone dislocated and pushed forward out of its place, rendering her unable to fully perform her usual household duties, there being some evidence tending to show that it was a permanent injury, $2,500 is not excessive.

Action in Case, for personal injuries. Trial in the Circuit Court of Cook County; the Hon. John Gibbons, Judge, presiding. Verdict and judgment for plaintiff; error by defendant. Heard in this court at the March term, 1899. Affirmed. Opinion filed June 29, 1899.

.. Statement.—Defendant in error (plaintiff below) was, injured October 7, 1896, by the derailing of one of the electric cars of plaintiff in error (defendant below) at 103d street, Chicago, and upon a trial before the Circuit Court. and a jury recovered a verdict of $5,000, on which, after a. remittitur of $2,500, judgment for $2,500 was entered, from which this writ of error is prosecuted.

The declaration shows that plaintiff was a passenger, and had paid her fare; charges that plaintiff in error was negligent, in that it carelessly and negligently drove and operated its car upon its railway at such a high, dangerous, reckless and unlawful rate of speed that at or near the curve of said railway south of 103d street the car left the track, and thereby the plaintiff, who was in the exercise of due care for her safety, was thrown from off the car seat to; the floor and against the sides, seats, doors and stove of car,; whereby she was injured, etc.; also, that the defendant so negligently and carelessly constructed its road-bed along, and laid its ties and rails thereon along the line of said railway, that on the curve at or a little south of 103d street the car upon which plaintiff was a passenger was thrown off

and left the track of said railway, and the plaintiff, who was in the exercise of due care for her own safety, was thereby thrown from off the seat of said car to and upon the floor of the same, and against the seats, sides, doors and stove of the car, and injured, etc.

The plaintiff testified in chief, viz.:

"As it was turning the curve the car left the track, and I was thrown on the other side, and my shoulder struck the seat on the other side. I went and tried to pick up the baby again, and as I went there to pick up the baby I was swung over on the other side, and hit my right side on the seat on the other side, and the third time I made an attempt to get the baby, I threw forward on my face and got the cut there, and one right there (indicating), and one up in here, and then a passenger picked me up and the conductor picked up the baby; they took me out and back home on the other car; it was about seven o'clock in the evening; my left shoulder was broke loose from the collar bone; I was hurt on the right side and got three cuts on my face; the company doctor came to see me that night; we sent for a doctor and he came the next morning and my arm was paining me more, and we sent for another doctor; we got Dr. Rankin in and he set my arm; my arm still troubles me—the left arm, the left shoulder. Could not rest in bed at all; had to be sitting up all the time; could not rest in bed because my right side was hurt and my left arm, and I could not lay on it; was disabled for three months; can not attend to my duties yet; did not rest good at all nights during those three months; when I laid down would have to lay on my back on account of my left arm and my right side; can not now lay on my left side on account of my arm; arm is still affected; can hold nothing; if I take my left arm up that way (indicating), I can raise it by holding it with the other; but without the other arm can not hold it up; can not carry my children on it or lift anything more heavy; my right side still affects me; if I go anywhere and carry the baby, my right side bothers me; have suffered much pain; in change of weather always suffer; had no injury before accident, and was a healthy, well woman up to that time; car left the track at the curve; lights all went out; the car went on the bank."

On cross-examination she testified in part, viz.:

"Dr. Rankin called about seven times; he set my arm; he took off the bandages and set my arm up here (indicat-

ing) and put plasters all over my arm and over the shoulder; the casts remained on the shoulder about eight or nine weeks; it was not a plaster cast; it was adhesive plaster; the shoulder was broken loose from the collar-bone; Dr. Rankin told me it was broken loose from the collar-bone; said he set the fractured bone which was the collar-bone; after Dr. Rankin we had Dr. Miller; that was about two weeks after Dr. Rankin commenced to come; Dr. Miller made seven or eight visits and after that I did not have any doctor and have none now; it is over a year since the last physician called; of course I had to have liniment and stuff right along to use on my arm; the pain in my side is right here (indicating); I felt it right away after the accident; I told all the doctors about it. I have not done any washing since the accident; I do my cooking and all that; I make the beds; I have this pain when I make the beds or sweep; when I raise my arms and take the baby I suffer this pain; I can't lift anything; when I wash the dishes my husband empties the water when he comes home; if it is just a little water I can lift it; but I can not lift a pan full of water; I am in this condition now about lifting."

Dr. Rankin, a physician and surgeon for forty-five years, and who had been surgeon for the Illinois Central and Michigan Central Railroad Companies, testified :

" I was called to treat plaintiff; went to her house and found her suffering a great deal of pain in her shoulder; found the external end of the clavicle bone was dislocated; that is the collar-bone; one end of it is attached to the breastbone and the other end to the scapula—the shoulder blade; it was her left shoulder that was injured; found the end of the bone dislocated and pushed forward in the neighborhood of an inch and the shoulder shortened about an inch and a quarter and down about an inch and a half lower than the other shoulder; the end of the bone was sticking here in the flesh where it should not be, and she could not use that arm; I reduced the dislocation."

On cross-examination he testified that the clavicle was not fractured; that he did not tell plaintiff her collar-bone was broken, but that it was dislocated. Also:

" I have not seen the woman since treating her until to-day; looked at it a little to-day and heard her testify; as to the probabilities of her regaining the use of her arm, that is altogether a question of time; the arm is, as you

might call it, permanently injured; there might be such a thing as that arm giving her a good deal of use and she might not have a good deal of use for it."

Sarah Fox, called for plaintiff, who lived in the same house with her, saw her every day from the time of the injury for three weeks and slept with her about one month in the summer of 1897, corroborates plaintiff as to her suffering pain, the extent of the injuries and their effect on plaintiff's ability to use her arm and her ability to work. At the close of plaintiff's evidence, counsel for defendant stated to the court that the motorman and conductor were then in the army, and "we don't contest the fact that the car ran off the track, and I therefore did not ask for a continuance of the cause on account of their absence." Also it appears that at the very commencement of plaintiff's evidence, when plaintiff was asked as to the speed of the car, objection was made, and the court said, "What difference does it make about the speed?" Whereupon plaintiff's attorney said, "Well, I don't know that it does, your honor. It left the track."

For plaintiff in error, Dr. Harvey, a physician and surgeon in practice twenty-five years, and then physician for the company, testified that he examined plaintiff five days after the accident when she claimed she was injured, "but found no injury; found her arm done up as if for fracture of the clavicle, but did not find any fracture."

Dr. Huizinga, a physician and surgeon since 1893, and in the employ of the company at the time and when he testified, testified that he examined plaintiff very fully and carefully about one hour on the evening of October 6, 1896; "she complained of having been in a street car wreck and of pains in region of her shoulder, temple and left side, and on examination I found bruises on left temple and left thigh, and that muscles of left shoulder were strained; they were sensitive; could find no abration or swelling; examined shoulder where scapula, clavicle and humerus come together, and found them in normal condition; there was no dislocation there."

By the Court: "That is, you found none?"

A. "I found none; had there been one I would have found it; attended patient two days." He also said, "The woman was apparently suffering when I went there, as she complained of pain in her temples, left shoulder and thigh on the left side." The witness had not much experience as a surgeon.

The foreman of transportation of defendant testified that "at the point where car left the track there is a reverse curve, and it is down grade; when I got to the scene of the accident I traced back the flange of the wheel to where the car left the track and found at that point part of a brick wedged down with the top of the brick on a level with the top of the rail, the west rail going south; the balance of the brick was crushed."

The night foreman of defendant testified that he "made an examination to learn the cause of car leaving the track at 103d street, and found partly crushed brick with half of the brick wedged in between the plank of the crossing, about three or four feet south of the south end of the crossing, wedged into the rail, and the other half of the brick crushed and lying at the side of the rail; I had to take a bar to pry the brick out so that the car following could pass over; this was at the curve."

No other evidence as to how the accident happened was offered.

KENESAW M. LANDIS, attorney for plaintiff in error.

JOHN C. TRAINOR, attorney for defendant in error.

MR. JUSTICE WINDES delivered the opinion of the court.

It is claimed that plaintiff failed to prove her case as made by the declaration; that the damages are excessive, and that plaintiff's counsel in his closing speech made such an appeal to the prejudices and passions of the jury that the judgment can not stand.

We are of opinion that the statement of counsel for the

company at the close of plaintiff's evidence indicates that he did not expect to contest the charge of negligence made against the company, which is claimed by the brief of defendant in error to have been the fact, and that there was an understanding between counsel, on the trial, that defendant's liability was conceded, and the only question to be considered was the extent of the plaintiff's injuries.

That there was such an understanding between counsel, to the knowledge of the court, would tend to explain the court's remark when plaintiff was asked as to the speed of the car, viz.: "What difference does it make about the speed?" and the further fact that her counsel did not ask that the question be answered.

We are also of opinion that the evidence of plaintiff, as set out in the statement preceding this opinion, is sufficient to make *prima facie* proof that the car was being run at a high and dangerous rate of speed while passing round a curve, and as one of defendant's witnesses says, a reverse curve and down grade. She says the car was turning the curve and she was thrown to the other side of the car from where she was sitting, and when she tried to pick up her baby she was thrown back again, and on making another attempt to get the baby, she was thrown on her face, and was picked up by a passenger. She also said the car went on the bank.

Besides, plaintiff was a passenger, in the exercise of ordinary care, and the car left the track while she was riding upon it. This is not disputed by the company, and makes a *prima facie* case for plaintiff, and placed upon defendant the burden of rebutting all the specific negligence charged in the declaration. N. C. St. R. R. Co. v. Cotton, 140 Ill. 486; Cramblett v. C. & N. W. Ry. Co., 82 Ill. App. 542.

There was no attempt by the company to show the speed of the car, nor to explain the accident, except that a brick was on the tracks. We are of opinion that did not overcome plaintiff's *prima facie* case. We have stated the evidence relating to the extent of plaintiff's injuries, the pain she suffered, the effect upon her ability to work and to use

her arm, and as to the probability of the permanency of such injuries. It is true there is some conflict in the evidence, but we can not say, after full consideration of all the evidence, that the damages are so excessive as to justify us in disturbing the judgment for that reason.

Some of the remarks of plaintiff's counsel to the jury were improper, but when objection was made, counsel was admonished by the court, and we are not prepared to hold that the language of counsel was so intemperate that it did in fact arouse the passions and prejudices of the jury to the extent of vitiating their verdict, though it was large. We are inclined to the opinion that the remittitur was such as to justify the learned trial judge in entering, as he did, judgment on the verdict for $2,500, and that this judgment does substantial justice in the case. It is therefore affirmed.